IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NAJI MUSAWIN YOMAN SHAKUR,**
Plaintiff,

v.

**CITY OF SANTA FE, NEW MEXICO;**
**SANTA FE COUNTY, NEW MEXICO;**
**NEW MEXICO LAW OFFICES OF THE PUBLIC DEFENDER;**
**OFFICER KYLE ELLIOTT, ID No. 7462,**
**Individually and in his Official Capacity;**
**SERGEANT HEINZ DELUCA, ID No. 6568,**
**Individually and in his Official Capacity;**
**OFFICER D. GALLEGOS, Badge No. 253,**
**Individually and in his Official Capacity;**
**OFFICER FABIAN ROJO, Badge No. 227,**
**Individually and in his Official Capacity;**
**DETENTION GUARD OSCAR LOPEZ,**
**Individually and in his Official Capacity;**
**MEREDITH COCKMAN, Individually;**
**GWEN SHAW, Individually;**
**ISAAC GENTET, Individually;**
**MARIAH VANDENBROEKE, Individually;**
**FAITH L. YOMAN, Individually;**
**and JOHN DOES 1-10, Individually and in their Official Capacities,**
Defendants.

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE. NEW MEXICO

MAY 04 2026

MITCHELL R. ELFERS
CLERK

26cv1408-SCY

Civil Action No.: _____

**JURY TRIAL DEMANDED**
**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND RELATED STATE CLAIMS**

## I. PRELIMINARY STATEMENT

This is a civil rights action arising from a coordinated, multi-year campaign of First Amendment retaliation, racially discriminatory selective enforcement, staged violent assaults in government custody, documented poisonings, extrajudicial deprivation of lawfully owned firearms, active suppression of mandatory official government records, coordinated obstruction of the criminal defense, and a manufactured criminal prosecution — conducted by officers and employees of the Santa Fe Police Department and their civilian collaborators against Plaintiff Naji Musawin Yoman Shakur, a Black man and political activist residing in Santa Fe, New Mexico.

The campaign began the day after Plaintiff exercised constitutionally protected First Amendment political speech on October 10-11, 2019, and continued without interruption through a coerced criminal plea in April 2026 — a span of six and a half years. Every material element of the campaign is documented in official government records generated by Defendants themselves, in audio recordings of Defendants' own statements, in written admissions by named Defendants, and in the proceedings of criminal Case No. D-101-CR-202400155 in the First Judicial District Court, Santa Fe, New Mexico.

All claims in this action are timely. The factual basis for the timeliness of each claim is set forth in the allegations below and will be addressed fully in response to any dispositive motion

Defendants may file.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) and the First, Second, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's New Mexico Civil Rights Act and state tort claims, which arise from the same common nucleus of operative fact as the federal claims.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Santa Fe County, New Mexico, and all Defendants reside or conduct business within this District.

## III. PARTIES

### A. Plaintiff

4. Plaintiff Naji Musawin Yoman Shakur is a Black man and adult male resident of Santa Fe, New Mexico. At all times relevant to this action, Plaintiff was engaged in constitutionally protected activities including political speech, lawful open carry of firearms, filing civil and criminal complaints, and petitioning courts for redress of grievances.

### B. Municipal and Institutional Defendants

5. Defendant City of Santa Fe, New Mexico is a municipal corporation organized under the laws of the State of New Mexico. At all relevant times the City operated the Santa Fe Police Department as its law enforcement agency. The City is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for the constitutional violations alleged herein arising from its policies, customs, practices, and supervisory deliberate indifference.

6. Defendant Santa Fe County, New Mexico is a political subdivision of the State of New Mexico. At all relevant times the County operated the Santa Fe County Adult Detention Center. The County is liable for the constitutional violations arising from the staged assaults and detention conditions alleged herein.

7. Defendant New Mexico Law Offices of the Public Defender (LOPD) is a statewide state agency organized under NMSA 1978 § 31-15-1 et seq. At all relevant times the LOPD employed and supervised Defendants Cockman, Shaw, and Gentet. The LOPD is sued as an institutional defendant for the policy, custom, practice, and deliberate indifference of its supervisory structure that produced the consistent pattern of defense obstruction documented across three successive attorney appointments in the same case.

### C. Individual Law Enforcement Defendants

8. Defendant Officer Kyle Elliott, ID No. 7462, was at all relevant times an SFPD officer acting under color of state law. He is the reporting officer on SFPD Supplemental Report for Case No. 19-003945, dated March 30, 2019, in which Plaintiff is the documented VICTIM of a vehicle crash. Elliott participated in the failure to produce the mandatory narrative accident report required by NMSA 1978 § 66-7-209. He is sued individually and in his official capacity.

9. Defendant Sergeant Heinz DeLuca, ID No. 6568, was at all relevant times an SFPD supervisor acting under color of state law. He is the approving supervisor on the Supplemental Report for Case No. 19-003945. DeLuca approved the closure of a documented serious injury collision — involving an identified driver who was Plaintiff's

next-door neighbor — by Cleared by Exceptional Means, without enforcement action against that driver and without any documented basis for that designation. He is sued individually and in his official capacity.

10. Defendant Officer D. Gallegos, Badge No. 253, was at all relevant times an SFPD officer acting under color of state law. He is the officer of record on SFPD Case No. 19-013761. He is sued individually and in his official capacity.

11. Defendant Officer Fabian Rojo, Badge No. 227, was at all relevant times an SFPD officer acting under color of state law. He is the officer of record on SFPD Report No. 2021-001932. He is sued individually and in his official capacity.

12. Defendant Guard Oscar Lopez was at all relevant times a detention guard at the Santa Fe County Adult Detention Center acting under color of state law. He is sued individually and in his official capacity for deliberately facilitating the first staged gang assault against Plaintiff during detention, resulting in a fractured jaw and multiple broken facial bones.

## D. Individual Public Defender Defendants

13. Defendant Meredith Cockman was at all relevant times an attorney employed by the New Mexico Law Offices of the Public Defender and assigned as defense counsel in Case No. D-101-CR-202400155. She is sued individually. Cockman received comprehensive written notice of every constitutional issue before any filing deadline, acknowledged the December 11, 2023 traffic stop as pretextual upon reviewing footage, filed no suppression motion and no constitutional motions of any kind, and made statements preserved in Exhibit 56 reflecting active indifference to the documented racial and civil rights conspiracy being perpetrated against Plaintiff. Her conduct served the interests of SFPD and the prosecution rather than those of her client and constitutes participation in the conspiracy alleged herein. Tower v. Glover, 467 U.S. 914 (1984); Dennis v. Sparks, 449 U.S. 24 (1980).

14. Defendant Gwen Shaw was at all relevant times an attorney employed by the New Mexico Law Offices of the Public Defender and assigned as defense counsel in Case No. D-101-CR-202400155. She is sued individually. Shaw acknowledged awareness of police collaboration with white supremacist groups to harm Black people in America and then immediately proceeded to obstruct Plaintiff's evidence gathering on that precise subject. Her conduct in acknowledging the conspiracy and then working against the client's ability to document it served the interests of the prosecution and law enforcement rather than those of her client. Upon Plaintiff raising the issue of her conduct, she was reassigned from defense counsel to standby counsel — a reassignment that created a direct conflict of interest — and she continued to mislead Plaintiff and disrupt the proceedings in that capacity.

15. Defendant Isaac Gentet was at all relevant times an attorney employed by the New Mexico Law Offices of the Public Defender and assigned as standby counsel in Case No. D-101-CR-202400155. He is sued individually. Gentet warned Plaintiff against raising constitutional arguments before reviewing any case materials, reframed criminal constitutional defenses as civil matters, reviewed the plea rather than the defense, rescheduled the pre-hearing meeting to one day before the critical January 7, 2026 hearing, and failed to respond to three written requests for engagement. The April 3, 2026 recorded conversation, Exhibit 52, documents this conduct in Gentet's own voice. His conduct produced the conditions for the constitutionally defective waiver and served the prosecution's goal of eliminating the constitutional defenses.

## E. Individual Civilian Defendants

16. Defendant Mariah Vandenbroeke is an HOA member who at all relevant times resided in

Santa Fe, New Mexico. She is sued individually for coordinating surveillance of Plaintiff's residence, filing retaliatory legal actions against him including obtaining a permanent injunction against him on July 2, 2020 as part of the coordinated campaign, reporting Plaintiff's lawful open carry of a firearm to SFPD in an effort to facilitate adverse law enforcement action against him, and conspiring with SFPD to facilitate and sustain the targeting campaign.

17. Defendant Faith L. Yoman, last known address 3152 La Paz Lane, Santa Fe, NM 87507, New Mexico OLN 5677, is an individual who at all relevant times was known to Plaintiff. She is sued individually for engineering the unannounced wellness check preceding Plaintiff's first arrest, coordinating the extrajudicial deprivation of Plaintiff's lawfully owned firearms, removing pharmaceutical evidence relevant to the documented poisonings from Plaintiff's vehicle without his knowledge or consent, and participating in the civil conspiracy. Her admissions are preserved in text messages filed as Exhibit 41 and a text message filed as Exhibit 40.

18. Defendants John Does 1-10 are SFPD officers, detention personnel, civilian participants, and other individuals whose identities are not yet fully established but who participated in the conduct alleged herein, including individuals involved in engineering the wellness check preceding Plaintiff's first arrest. Plaintiff will amend this Complaint to specifically identify these Defendants upon discovery.

## IV. FACTUAL ALLEGATIONS

### A. Protected Activity and Surveillance Activation — October 2019

19. On October 10-11, 2019, Plaintiff distributed anti-government and anti-immigration political leaflets in Santa Fe, New Mexico. This activity constitutes protected political speech under the First Amendment. Lovell v. City of Griffin, 303 U.S. 444 (1938).

20. On October 11-12, 2019 — the day immediately following the leaflet distribution — Plaintiff's apartment complex at 151 Calle Ojo Feliz, Santa Fe, New Mexico was placed under police surveillance. This is documented in official SFPD Computer Aided Dispatch records, as well as repeated acknowledgments of Faith L. Yoman, Exhibit 51, Incidents 1 and 2. The near one-day temporal connection between the protected speech and the government surveillance activation establishes the causal link required for a First Amendment retaliation claim. Nieves v. Bartlett, 587 U.S. 391 (2019); Hartman v. Moore, 547 U.S. 250 (2006).

21. During this same period, while 151 Calle Ojo Feliz was under police surveillance, Plaintiff lawfully open-carried a firearm while walking his companion animal Lulu to his vehicle — activity protected under the Second Amendment. New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). Defendant Mariah Vandenbroeke reported this lawful open carry to SFPD in an effort to facilitate adverse law enforcement action against Plaintiff. Upon this open carry and the purchase of a new vehicle, the coordinated harassment and targeting activity escalated immediately.

22. On October 9, 2020, Plaintiff filed civil Case No. D-101-CV-202002218 in the First Judicial District Court, Santa Fe, naming SFPD, the City of Santa Fe, the Santa Fe County Detention Facility, and other Defendants. Filing a civil lawsuit constitutes protected First Amendment petitioning activity. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972); Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999). That case was administratively closed on October 12, 2022 without adjudication on the merits.

**B. Selective Non-Enforcement — The March 2019 Collision and Suppression of Its Record**

23. On March 29, 2019, Eric Noble — Plaintiff's next-door neighbor at Unit B, 151 Calle Ojo Feliz — drove his vehicle into Plaintiff at the corner near his residence, causing a seriously fractured leg. Plaintiff's companion animal Lulu was present at the time of the collision. Plaintiff sustained the fractured leg in part as a result of acting to protect Lulu from the impact. Of additional significance, a grave marker bearing the name 'Lulu' had been placed at the precise corner where the collision occurred prior to the incident and was photographed by Plaintiff — evidence of premeditation and foreknowledge of harm directed at Plaintiff and his companion animal. SFPD Case No. 19-003945 was generated. Officer Kyle Elliott, ID No. 7462, was the reporting officer. Sergeant Heinz DeLuca, ID No. 6568, was the approving supervisor.

24. The SFPD Supplemental Report for Case No. 19-003945, produced through IPRA and filed as Exhibit 57, establishes the following: the incident type is VEHICLE CRASH; Plaintiff is listed as VICTIM; the case is CLOSED — CL.E. (Cleared by Exceptional Means); and no narrative incident report has been produced to Plaintiff despite a pending IPRA request.

25. NMSA 1978 § 66-7-209 mandates a written narrative accident report for any collision involving injury. A fractured leg is a documented injury. As of the date of this Complaint, no primary narrative report for Case No. 19-003945 has been produced to Plaintiff despite a pending IPRA request past the statutory deadline. The limitations clock on claims dependent upon the content of that withheld report has not started, as true discovery cannot occur until the primary report is produced or its non-existence is formally and officially confirmed.

26. No citation was issued to Eric Noble. No prosecution was pursued. No enforcement action of any kind was taken against an identified driver who caused documented serious physical injury to Plaintiff.

27. Approximately four years later, Plaintiff drove slowly for approximately three blocks, actively avoided all collisions, caused no collision, injured no person, and damaged no property — and was charged with a Class F4 felony by the same department applying the same recklessness standard. The documented inversion of enforcement — serious injury caused to Plaintiff, zero enforcement; harmless driving by Plaintiff, felony prosecution — by the same agency constitutes selective enforcement in violation of the Equal Protection Clause. Village of Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252 (1977); State v. Cochran, 1991-NMCA-051.

**C. First Arrest — Poisonings, Engineered Detention, and Staged Assault — 2020**

28. Prior to Plaintiff's first arrest in March 2020, Plaintiff was subjected to documented poisonings. An oily substance was applied to his vehicle door handle on multiple occasions by a suspect associated with License Plate AUGG90. A pharmaceutical substance was introduced into Plaintiff's drinking water over a period of weeks, producing drug-induced psychosis subsequently diagnosed by medical personnel at the Santa Fe County Adult Detention Center.

29. Plaintiff reported the poisonings to SFPD on February 27, 2021. SFPD CAD Event ID 21-028862 documents Plaintiff's explicit report of being poisoned and having firearms stolen. The responding officer spoke with Plaintiff's mother rather than investigating, determined no report was needed, and closed the matter without investigation. Exhibit 51, Incident 10.

30. Defendant Faith L. Yoman, acting in coordination with individuals whose identities will be

established through discovery, engineered an unannounced wellness check at Plaintiff's residence preceding the first arrest. Plaintiff's storage unit keys were stolen before the arrest, preventing him from securing his lawfully owned firearms.

31. While detained at the Santa Fe County Adult Detention Center following the first arrest, a staged gang assault was deliberately facilitated by Defendant Guard Oscar Lopez, resulting in a fractured jaw and multiple broken facial bones. No report was permitted to be filed.

32. Following Plaintiff's first arrest, his lawfully owned firearms were seized. Defendant Faith L. Yoman admitted in text messages filed as Exhibit 41 that she transferred Plaintiff's seized firearms to New Mexicans To Prevent Gun Violence, or to individuals she perceived as law enforcement — not to a law enforcement property room.

33. On February 28, 2024, Defendant Faith L. Yoman admitted in a text message filed as Exhibit 40 that she had removed a veterinary medication from Plaintiff's vehicle without his knowledge or consent. When Plaintiff questioned her about this removal, she returned the medication to his possession. This medication was relevant to the death of Plaintiff's companion animal Lulu, who died on approximately December 6-7, 2023, four days before the December 11, 2023 traffic stop. The unauthorized removal of this medication without disclosure, and only returning it upon being confronted, is consistent with an intent to interfere with the preservation of evidence relevant to Lulu's death.

### D. The Pattern of Report Refusals — 2019 Through 2021

34. Between October 2019 and August 2021, Plaintiff made at least 14 documented calls to SFPD reporting crimes being committed against him. Official SFPD CAD records obtained through IPRA and filed as Exhibit 51 document the following: of 13 unique incidents, 8 produced no contact or no report. The two highest-severity incidents — a report of being poisoned and having firearms stolen, and a report of being followed by four coordinated vehicles for one year — produced no reports of any kind.

35. SFPD CAD Event ID 21-028822, February 27, 2021, documents Plaintiff reporting being followed by four different vehicles for an entire year. The dispatcher's official notation entered into the government record was: 'CALLER SOUNDS 1058.' Code 1058 designates mentally disturbed. No investigation was conducted. The official governmental response to a documented report of coordinated vehicle stalking was to officially characterize the reporter as mentally disturbed.

36. The identical notation 'Naji suffers from a [REDACTED]' appears copy-pasted identically between Incident 10 (February 27, 2021) and Incident 12 (March 2, 2021) — different dates, identical language — demonstrating a pre-existing standardized institutional designation applied to dismiss Plaintiff's reports without investigation.

### E. The Cessation of All Targeting Activity — April 2022

37. In April 2022, Plaintiff reported criminals impersonating law enforcement to SFPD's online reporting portal. All targeted ambushes and coordinated incidents ceased immediately and completely upon that single internal report. This cessation is documented in the record. The only explanation consistent with this fact is that the individuals conducting the campaign had real-time access to Plaintiff's SFPD reports — which requires institutional access to official SFPD systems and proves that all acts constitute a single institutionally coordinated continuing violation.

### F. The Second Staged Assault During Detention

38. During Plaintiff's second detention at the Santa Fe County Adult Detention Center, a second staged assault was conducted — five individuals against one — by Isaac

Apodaca (known as 'Spalding'), Alan Perez, an individual known as 'Sweeney,' an individual known as 'Magic,' and Richie Cordova. Witness Edin Eduardo Climaco Veliz was present. Police were summoned to the facility and Plaintiff filed a report, however no such report has been produced through IPRA request, indicating that police falsely led Plaintiff to believe a report had been filed and then did not file one.

## G. The Manufactured Traffic Stop — December 11, 2023

39. On December 11, 2023, SFPD officers conducted a surveillance tail of Plaintiff prior to the traffic stop. The abrupt turn that provided the stated pretext was caused by Plaintiff monitoring that surveillance tail. Tire strips were pre-deployed without warning — a planned tactical measure requiring advance preparation. Former defense counsel Meredith Cockman reviewed surveillance footage of the stop and stated to Plaintiff in substance that she believed the stop was pretextual. She filed no suppression motion. Exhibit 56 documents her written admission that she filed no motions on the constitutional claims.

40. Plaintiff drove slowly throughout the incident, actively avoided all collisions, caused no collision, injured no person, and damaged no property. He drove to Pete's Place — a former workplace — and surrendered. One month before this incident, Plaintiff was stopped by Los Alamos Police Department at midnight, fully cooperated, received a minor infraction, and proceeded without incident.

41. Plaintiff was charged with Aggravated Fleeing a Law Enforcement Officer, No Injury or Great Bodily Harm, under NMSA 1978 § 30-22-1.1(A) and (B), a Class F4 felony. The charge required proof of willful disregard for the safety of persons or property. Plaintiff's documented active collision avoidance and the zero harm resulting from his driving are legally incompatible with willful disregard for safety.

42. Additionally, on April 10, 2023, Officer Ulises Gabe Nieto filed a false larceny charge — Case No. M-49-FR-202300470 — against Plaintiff without probable cause, solely to generate outstanding warrants that would provide additional legal justification for the planned December 2023 arrest. The charge was dismissed by Nolle Prosequi on February 22, 2024 — immediately after it had served its purpose. The outstanding warrants from this manufactured charge were served on Plaintiff on December 11, 2023, the same day as the traffic stop.

## H. The Criminal Proceedings — Coordinated Defense Obstruction

43. Following the December 2023 arrest, Case No. D-101-CR-202400155 was filed on March 29, 2024, with arraignment on April 22, 2024. The case remained pending for 24 months, producing ten amended trial scheduling orders.

## 1. Meredith Cockman

44. Cockman was assigned as first defense counsel. She received comprehensive written notice of every constitutional issue before any filing deadline. On October 1, 2024, she confirmed in written communications documented in Exhibit 56 the following: 'None' in response to every question about motions filed regarding misconduct; 'None' regarding pretrial motions to address rights violations; 'No' regarding any dismissal motion; 'I am not a civil rights attorney.' In a recorded conversation preserved as part of Exhibit 56, Cockman stated 'So what, there's only like five Black people in Santa Fe' when asked what remedy the court would offer for the criminal conspiracy being perpetrated against Plaintiff. She reviewed surveillance footage, identified the stop as pretextual, and filed zero constitutional motions during her entire representation.

### 2. Gwen Shaw

45. Shaw was assigned as second defense counsel. She acknowledged awareness that police departments conspire with white supremacist groups to harm Black people in America — the precise pattern documented in this record — and then immediately proceeded to obstruct Plaintiff's evidence gathering on that very subject. She filed nothing substantive on the constitutional claims. She was then reassigned as standby counsel, a direct conflict of interest, and continued to mislead Plaintiff and disrupt the proceedings in that capacity.

### 3. Isaac Gentet

46. Gentet was assigned as standby counsel. On April 3, 2026, in a recorded conversation filed as Exhibit 52, Gentet warned against raising constitutional arguments before reviewing any case materials at timestamp 4:02; reframed criminal constitutional defenses as civil matters at timestamp 12:12; and reviewed the plea rather than the defense at timestamp 16:11. He rescheduled his pre-hearing meeting with Plaintiff to one day before the critical January 7, 2026 hearing. Three written email requests for substantive engagement went unanswered. When asked directly why, Gentet took approximately thirty seconds and could not provide an explanation.

### 4. The Institutional Pattern

47. Three successive attorneys from the same statewide state agency engaged in the same documented operational pattern: receive comprehensive written notice of every constitutional violation; file nothing; discourage constitutional arguments; steer toward plea. This pattern across three consecutive appointments from the same institutional hierarchy reflects a custom, practice, or deliberate indifference at the institutional level that served the prosecution's interests rather than the client's.

48. ADA Victor Sanchez filed an opposition brief containing the demonstrably false statement that Plaintiff 'failed to have any good-faith discussions about missing discovery' — contradicted by twenty-plus pro se motions on the docket and five written demands documented in Exhibit 56. The State simultaneously filed a Motion in Limine seeking to exclude all evidence of the six-year retaliatory pattern from the jury while conceding in a prior brief that necessity and duress were jury questions — mutually exclusive positions.

49. In April 2026, Plaintiff entered a plea agreement. That plea represents the final and most recent injury in the six-year chain of documented harm.

### I. Physical and Neurological Injury

50. As a direct result of Defendants' conduct, Plaintiff sustained the following documented physical injuries: a fractured jaw and multiple broken facial bones from the first staged detention assault; permanent dental damage requiring extractions; cardiac damage from the toxic substance applied to his vehicle door handle and from pharmaceutical substances introduced into his drinking water; and lasting neurological damage — affecting processing speed, working memory, and verbal fluency — from repeated toxic exposures. Plaintiff sought toxicological testing at Christus St. Vincent's Hospital in Santa Fe. The hospital declined to conduct testing, leaving the poisoning untreated and its effects permanent.

### J. Documented Racial Animus

51. The racial dimension of the targeting campaign is established in the record by statements of individuals within and connected to the institutional apparatus that prosecuted Plaintiff. Defendant Meredith Cockman stated in a recorded conversation

preserved as part of Exhibit 56: 'So what, there's only like five Black people in Santa Fe.' Defendant Gwen Shaw acknowledged awareness of police collaboration with white supremacist groups to harm Black people in America. Plaintiff's associate Rudy Levick stated in a January 2020 recorded call, Exhibit 13: 'It's Skinhead City' — in reference to the documented targeting environment in Santa Fe.

## V. CLAIMS FOR RELIEF

### COUNT I: 42 U.S.C. § 1983 — First Amendment Retaliation

Against: City of Santa Fe; all individual SFPD Defendants; John Does 1-10

52. Plaintiff incorporates all preceding paragraphs by reference.

53. Plaintiff engaged in constitutionally protected activities: political leaflet distribution in October 2019; lawful open carry of firearms; filing SFPD reports; and filing civil Case No. D-101-CV-202002218 in October 2020. Defendants engaged in adverse governmental action — surveillance activation the day after leaflet distribution, systematic report refusals, staged assaults, documented poisonings, manufactured arrest, and 24-month prosecution — as a direct and but-for cause of Plaintiff's protected activities. Nieves v. Bartlett, 587 U.S. 391 (2019); Hartman v. Moore, 547 U.S. 250 (2006). The City is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for the established custom and practice demonstrated by the 14-incident CAD record, the supervisory-approved exceptional clearance of the accident case, and the coordinated prosecution.

### COUNT II: 42 U.S.C. § 1983 — Fourteenth Amendment Equal Protection, Selective Enforcement

Against: City of Santa Fe; Officer Elliott; Sergeant DeLuca; John Does 1-10

54. Plaintiff incorporates all preceding paragraphs by reference.

55. Defendants applied the law in a discriminatory manner: Eric Noble — identified driver who caused Plaintiff a documented seriously fractured leg — received no citation, no prosecution, and no investigation. His case was closed by Exceptional Means with supervisory approval. Plaintiff — who drove slowly causing zero harm — was prosecuted for a felony by the same department. The deliberate failure to produce the mandatory narrative accident report required by NMSA 1978 § 66-7-209, combined with the misuse of the Exceptional Clearance designation, constitutes a departure from standard procedure demonstrating discriminatory intent. Arlington Heights, 429 U.S. 252 (1977).

### COUNT III: 42 U.S.C. § 1983 — Fourth Amendment, Unlawful Seizure and Pretextual Stop

Against: City of Santa Fe; officers conducting the December 11, 2023 stop; John Does 1-10

56. Plaintiff incorporates all preceding paragraphs by reference.

57. The December 11, 2023 traffic stop was preceded by a surveillance tail and involved pre-deployed tire strips — a planned operation identified as pretextual by former defense counsel upon reviewing footage. The stop was the operational conclusion of a documented multi-year retaliatory campaign. All evidence obtained from it is fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963).

### COUNT IV: 42 U.S.C. § 1983 — Second Amendment, Extrajudicial Firearms Deprivation

Against: City of Santa Fe; Faith L. Yoman; John Does 1-10

58. Plaintiff incorporates all preceding paragraphs by reference.

59. Through coordinated conspiracy — Defendant Yoman engineering the wellness check, Plaintiff's storage keys stolen before arrest, firearms seized upon arrest, and Yoman

admitting in her own text messages that she transferred the firearms to a non-law-enforcement entity or to individuals she perceived as law enforcement — Plaintiff's Second Amendment rights were extrajudicially violated. Bruen, 597 U.S. 1 (2022).

### COUNT V: 42 U.S.C. § 1983 — Eighth Amendment, Staged Assaults in Detention

Against: Santa Fe County; Guard Oscar Lopez; John Does 1-10

60. Plaintiff incorporates all preceding paragraphs by reference.

61. Guard Oscar Lopez deliberately facilitated the first staged gang assault during Plaintiff's first detention, resulting in a fractured jaw and multiple broken facial bones. A second five-on-one staged assault occurred during the second detention. Detention guard facilitation of a planned assault constitutes deliberate indifference to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825 (1994). Santa Fe County is vicariously liable for Lopez's conduct within the scope of his employment.

### COUNT VI: 42 U.S.C. § 1983 — Malicious Prosecution

Against: City of Santa Fe; ADA Victor Sanchez individually; John Does 1-10

62. Plaintiff incorporates all preceding paragraphs by reference.

63. Defendants initiated and sustained criminal proceedings against Plaintiff without probable cause to support the recklessness element of the aggravated fleeing charge, and without probable cause for the manufactured larceny charge filed April 10, 2023, for the improper purpose of retaliating against protected activity and permanently criminalizing Plaintiff. Thompson v. Clark, 596 U.S. 36 (2022). The plea does not bar this claim. Nelson v. Campbell, 541 U.S. 637 (2004).

### COUNT VII: 42 U.S.C. § 1983 — Conspiracy With State Actors to Deprive of Due Process and Equal Protection

Against: Meredith Cockman; Gwen Shaw; Isaac Gentet; New Mexico Law Offices of the Public Defender; John Does 1-10

64. Plaintiff incorporates all preceding paragraphs by reference.

65. Defendants Cockman, Shaw, and Gentet, while employed as state attorneys by the LOPD, engaged in conduct that did not constitute independent advocacy on behalf of their client but rather coordination with and in furtherance of the interests of SFPD and the prosecution — to the direct detriment of Plaintiff's constitutionally protected interests. Tower v. Glover, 467 U.S. 914 (1984); Dennis v. Sparks, 449 U.S. 24 (1980). Three successive attorneys from the same state institutional hierarchy engaged in the same operational pattern of non-action. That pattern served a consistent outcome: Plaintiff proceeded to a coerced plea without ever having his constitutional defenses heard with the evidence to back them. The LOPD is liable for the custom, practice, and deliberate indifference of its supervisory structure that produced this pattern across three successive appointments in the same case.

### COUNT VIII: 42 U.S.C. § 1985(3) — Civil Conspiracy to Deprive of Equal Protection

Against: All individual Defendants

66. Plaintiff incorporates all preceding paragraphs by reference.

67. Defendants conspired to deprive Plaintiff — a Black man and political activist — of equal protection of the laws and equal privileges and immunities. The conspiracy included SFPD's institutional coordination of the targeting campaign, proven by the immediate cessation of all ambushes upon the April 2022 impersonation report; Cockman's, Shaw's, and Gentet's coordinated non-action serving prosecution interests; Mariah Vandenbroeke's surveillance coordination, retaliatory legal action, and report of Plaintiff's

lawful open carry to SFPD; and Faith L. Yoman's wellness check engineering, firearms deprivation, and unauthorized removal of pharmaceutical evidence. Griffin v. Breckenridge, 403 U.S. 88 (1971).

## COUNT IX: New Mexico Civil Rights Act, NMSA 1978 § 41-4A

Against: City of Santa Fe; Santa Fe County; New Mexico Law Offices of the Public Defender

68. Plaintiff incorporates all preceding paragraphs by reference.

69. Defendants, acting under color of law, deprived Plaintiff of rights guaranteed by the New Mexico Constitution including free speech (Article II § 17), the right to bear arms (Article II § 6), equal protection (Article II § 18), freedom from unreasonable seizure (Article II § 10), and the right to effective assistance of counsel and due process (Article II §§ 14, 18). Qualified immunity does not apply to NMCRA claims as a matter of statute. NMSA 1978 § 41-4A-3. The NMCRA applies to public bodies including the LOPD as a state agency. Attorney fees are recoverable under NMSA 1978 § 41-4A-9.

## COUNT X: New Mexico Tort Claims Act — Battery, NMSA 1978 § 41-4-12

Against: Santa Fe County; Guard Oscar Lopez

70. Plaintiff incorporates all preceding paragraphs by reference.

71. Guard Oscar Lopez committed battery by deliberately facilitating a staged gang assault that caused a fractured jaw, multiple broken facial bones, and permanent dental damage. Santa Fe County is vicariously liable for Lopez's conduct within the scope of his official employment.

## COUNT XI: Intentional Infliction of Emotional Distress

Against: All individual Defendants

72. Plaintiff incorporates all preceding paragraphs by reference.

73. Defendants' conduct spanning six and a half years — including staged assaults producing permanent physical injury, coordinated poisonings producing lasting cardiac and neurological damage, years of documented stalking and harassment, the placement of a grave marker bearing the name of Plaintiff's companion animal at the precise corner where Plaintiff would later be struck by a vehicle driven by a neighbor who faced no enforcement consequences, coordination of an enforcement action with the death of Plaintiff's companion animal Lulu four days before the planned arrest, the unauthorized removal of pharmaceutical evidence relevant to that death, and 24 months of engineered criminal prosecution through coordinated defense obstruction culminating in a forced plea — is extreme and outrageous and caused severe and lasting emotional and physical distress. Padwa v. Hadley, 1999-NMCA-067, 128 N.M. 530.

## VI. DAMAGES

74. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer the following damages:

75. Compensatory damages including documented medical expenses — dental surgery, facial reconstruction, cardiac treatment, and neurological evaluation; lost income from career disruption caused by two arrests and 24 months of criminal proceedings; and property losses including the documented value of Plaintiff's extrajudicially transferred firearms collection, stolen vehicle title, and personal property taken during detentions.

76. Non-economic damages including pain and suffering from permanent physical injuries — fractured jaw, broken facial bones, cardiac damage, and lasting neurological impairment; severe and lasting emotional distress from six and a half years of documented targeting, staged violence, poisoning, and judicial persecution; loss of Plaintiff's companion animal

Lulu, whose death was preceded by threatening symbolism and whose pharmaceutical evidence was removed without authorization; and loss of enjoyment of life from permanent neurological impairment affecting daily cognitive functioning.

77. Punitive damages against all individual Defendants. The conduct documented in this Complaint — staging gang assaults in a government detention facility, coordinating poisonings producing permanent injury, suppressing mandatory accident reports to protect a perpetrator while prosecuting the victim, placing a grave marker bearing the name of Plaintiff's companion animal at the site of a premeditated collision, and engineering 24 months of coordinated defense obstruction — constitutes reckless or callous indifference to federally protected rights. Smith v. Wade, 461 U.S. 30 (1983).

78. Attorney fees and costs as the prevailing party under 42 U.S.C. § 1988 and NMSA 1978 § 41-4A-9.

79. Pre- and post-judgment interest as permitted by law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Naji Musawin Yoman Shakur respectfully requests that this Court:

80. Enter judgment in Plaintiff's favor on all Counts;

81. Award compensatory damages in an amount to be determined at trial;

82. Award non-economic damages for pain and suffering, permanent physical injury, emotional distress, loss of Lulu, and loss of enjoyment of life in an amount to be determined at trial;

83. Award punitive damages against all individual Defendants in an amount sufficient to punish the documented conduct and deter its repetition;

84. Issue a declaratory judgment that Defendants' conduct violated the United States Constitution and the New Mexico Constitution;

85. Issue injunctive relief requiring Defendants to produce all withheld records including the primary incident report for SFPD Case No. 19-003945, implement non-retaliation policies, and take corrective action with respect to the named officers and attorneys;

86. Award attorney fees and costs under 42 U.S.C. § 1988 and NMSA 1978 § 41-4A-9;

87. Award pre- and post-judgment interest as permitted by law; and

88. Grant such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

Naji Musawin Yoman Shakur

Plaintiff Pro Se

1000 Cordova Pl #233

Santa Fe, NM 87505

najishakur93@gmail.com

505-477-1280

Date: 5/1/2026

Naji M. Shakur
1000 Cordova Pl #233
Santa Fe, Nm, 87501

## RECEIVED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 04 2025

MITCHELL R. ELFERS
CLERK



$8.58        US POSTAGE
FIRST – CLASS IMI
May 01 2026
Mailed from ZIP 87505
7 OZ FIRST – CLASS MAIL FLATS RATE
ZONE 2

12279755

063800010282497

endicia

**F**

# FIRST – CLASS MAIL

**NAJI SHAKUR**
**1000 CORDOVA PL PMB 233**
**SANTA FE NM 87505**

| C023 |

Shipped using PostalMate
Pkg:720949

SHIP **US DISTRICT COURT DISTRICT OF NM**
TO: **CLERK OF COURT**
 **333 LOMAS BLVD NW STE 270**
**ALBUQUERQUE NM 87102 – 2274**

## USPS CERTIFIED MAIL

9407 1118 9956 1938 0497 10





SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where ... export control and customs purposes. If exported from the US ... port Administration RRD A 0126

UNITED STATES POSTAL SERVICE®

# CERTIFIED MAIL®
FOR USE ONLY WITH IMpb SHIPPING LABEL